IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:23-cv-00791 |
| | ) | |
| v. | ) | Judge Richardson |
| | ) | Magistrate Judge Newbern |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON | ) | JURY DEMAND |
| COUNTY, TENNESSEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MARK SELLS'S ANSWER AND AFFIRMATIVE DEFENSES**

Defendant, Mark Sells, hereby submits his Answer and Affirmative Defenses in this matter:

**ANSWER**

1.      Plaintiff **JENNIFER PARKER** brings this 42 U.S.C. § 1983 civil rights claim for damages against Defendants **METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE** and **MARK SELLS** alleging violations of Plaintiff's rights under the Fourth Amendment to the U.S. Constitution.

**RESPONSE:** Admitted that Plaintiff brings this lawsuit under 42 U.S.C. § 1983 and alleges that the Defendants violated her rights under the Fourth Amendment. Denied that Plaintiff's constitutional rights or other state or federal rights were violated or that she is entitled to the relief requested or to any other relief in general.

**PARTIES**

2.      Plaintiff **Jennifer Parker ("Ms. Parker")** is a resident of Davidson County, Tennessee.

**RESPONSE:** Admitted upon information and belief that Plaintiff is a resident of Davidson County, Tennessee.

3.     Defendant **Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro")** is a municipal government organized under the laws of the state of Tennessee.

**RESPONSE**: Admitted that Defendant Metro Nashville is a municipal government organized under the laws of the state of Tennessee.

4.     Defendant **Mark Sells ("Sells")** is an adult resident of Rutherford County, Tennessee who was at all times relevant to this lawsuit an employee of the Nashville Fire Department, Defendant Metro's municipal fire department.

**RESPONSE**: Denied that Defendant Mark Sells ("Defendant Sells") is a resident of Rutherford County. Admitted that Defendant Sells is an adult and was an arson investigator with the Nashville Fire Department ("NFD") during the times relevant to the Complaint. It is further admitted that NFD is Defendant Metro Nashville's municipal fire department.

## JURISDICTION AND VENUE

5.     This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331.  Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because all claims related to this case occurred in this district.

**RESPONSE**: Jurisdiction and venue are admitted.

## FACTUAL BACKGROUND

**A.     Defendant Sells.**

6.     Defendant Sells was employed by Defendant Metro as a "Fire Arson Investigator" with the Nashville Fire Department ("NFD") from June 2013 until February 8, 2022, when Sells abruptly resigned from his position.

**RESPONSE**: Admitted that Defendant Sells was a Fire Arson Investigator with NFD beginning in June 2013. Admitted that Defendant Sells resigned from NFD and that his last date of employment was February 8, 2022. All other allegations are denied.

7.       Prior to his employment with Metro, Sells had worked short stints as a fire investigator at several other municipal Tennessee agencies as well as operating his own private consultancy in the field.

**RESPONSE**: Admitted that Defendant Sells worked as a fire investigator with other Tennessee municipalities before joining NFD. Admitted that Defendant Sells operated a private fire investigation company while employed with NFD.

8.       From 1995 – 1998, Sells was employed by the Lavergne, Tennessee Fire Department ("Lavergne FD") as an engineer.

**RESPONSE**: Admitted that Defendant Sells was employed as a firefighter/engineer by the Lavergne Fire Department from 1995 – 1999.

9.       From 1998 – 1999, Sells was employed by Lavergne FD as a fire inspector.

**RESPONSE**: Admitted.

10.       From 1999 – 2002, Sells was employed by the Franklin Fire Department ("Franklin FD") as a Fire Marshal Assistant. On April 17, 2001, Franklin FD verbally reprimanded Sells for responding "emergency traffic" to a situation in violation of the Fire Chief's criteria for such a response. On February 1, 2002, Franklin FD disciplined Sells for violating Franklin FD's policy against "Any act of omission or commission tending to injure the public service, and willful failure of the employee to conduct himself properly." On August 1, 2002, Sells abruptly resigned from Franklin FD.

**RESPONSE**: Admitted that Defendant Sells was an Assistant Fire Marshal with the Franklin Fire Department from 1999 – 2002. Admitted that Defendant Sells received performance counseling and discipline while employed there, but Sells does not recall the specific verbiage.

Admitted that Defendant Sells resigned from Franklin FD and that his last date of employment was August 1, 2002. All other allegations are denied.

11. From 2002 – 2006, Sells was employed as a fire investigator by Knox County, Tennessee's fire department ("Knox County FD"). During his tenure there, Knox County FD issued a formal written reprimand against Sells for dishonesty and irresponsibility in the course of his duties. On September 5, 2006, Sells resigned from Knox County FD.

**RESPONSE**: Admitted that Defendant Sells was a fire investigator at the Knox County Fire Department from 2002 – 2006. Admitted that Defendant Sells received performance counseling while employed there, but Sells does not recall the specific verbiage. Admitted that Defendant Sells resigned from Knox County Fire Department and that his last date of employment was September 5, 2006.

12. From 2006 – 2012, Sells was employed as a Certified Fire Investigator by a private company in Nashville, EFI Global.

**RESPONSE**: Admitted that Defendant Sells was employed as a private investigator by EFI Global in Franklin, Tennessee, from 2008—2012.

13. In 2012, Sells opened his own company, Firetrak Investigations, a private fire investigation company.

**RESPONSE**: Admitted.

14. In 2013, Metro hired Sells to serve as a Fire Arson Investigator. On information and belief, although Sells listed his prior employment in his Metro application, Metro failed to request or collect Sells's past employment files in its hiring process. On information and belief, Sells continued operating Firetrak Investigations while he worked for Metro.

**RESPONSE**: Admitted that Defendant Sells served as a Fire Arson Investigator with NFD beginning in 2013. Admitted that Defendant Sells operated Firetrak Investigations during

his employment with NFD. Admitted that Defendant Sells listed his prior employment on his Metro application. Defendant Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph; therefore, these allegations are denied.

15. On information and belief, from 2016 – 2018 Sells allowed his National Association of Fire Investigators ("NAFI") certification to lapse. However, throughout this period Sells continued testifying in court proceedings that he was NAFI certified.

**RESPONSE**: Admitted that Sells's National Association of Fire Investigators certification lapsed. Denied that Sells was aware that his certification had lapsed. Admitted that Sells testified that he was NAFI certified because he thought his certification was in good standing.

**B.** **Jennifer and Kalissa Parker.**

16. Jennifer Parker ("Ms. Parker") is a forty-five-year-old mother who works in retail at "Edible Arrangements," a fruit arrangement and gift delivery company.

**RESPONSE**: Admitted that Plaintiff is a 46-year-old mother. Defendant Mark Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph; therefore, the allegations are denied.

17. Ms. Parker has two living grown daughters, and one deceased grown daughter, Kalissa. On January 27, 2018, when Kalissa was 18 years old, she tragically committed suicide by setting herself on fire inside Ms. Parker's home.

**RESPONSE**: Admitted that Plaintiff's daughter, Kalissa, passed away on January 27, 2018, and that the Medical Examiner who performed Kalissa's autopsy opined the cause of death was "complications of thermal injuries and inhalation of products of combustion." It is denied that Kalissa died by suicide by setting herself on fire. Defendant Sells lacks sufficient information or knowledge to admit or deny whether Plaintiff has two living grown daughters; therefore, this allegation is denied.

18.     Ms. Parker's home at that time was a two-story house on a residential cul de sac in Nashville, Tennessee. She owned the home outright and did not have homeowner's insurance on the property.

**RESPONSE**: Admitted that Plaintiff's home on the date of the fire was a two-story house in a residential area in Nashville, Tennessee. Defendant Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph; therefore, those allegations are denied.

19.     At the time of Kalissa's suicide Ms. Parker also had custody of her 4-year-old granddaughter, K.W.  K.W. is the daughter of Ms. Parker's other daughter, Kiera.

**RESPONSE**: Denied that Kalissa died by suicide. Admitted that at the time of Kalissa's death, Plaintiff had custody of her 4-year-old granddaughter, K.W. Defendant Sells lacks the information and knowledge necessary to admit or deny the remaining allegations in this paragraph; therefore, those allegations are denied.

**C.     The period prior to Kalissa's suicide.**

20.     Kalissa had suffered from severe mental health issues and engaged in high risk behaviors for several years prior to her suicide.

**RESPONSE**: Denied that Kalissa committed suicide. Defendant Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph; therefore, those allegations are denied.

21.     In December 2015, Kalissa was robbed and raped.  By this point Kalissa was already abusing cocaine, marijuana, and Xanax.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

22.     In January 2016, Kalissa attempted suicide by slitting her wrists, resulting in a six-month inpatient psychiatric commitment. Kalissa was diagnosed with numerous severe mental health and substance abuse disorders and received psychiatric, psychological, and substance abuse treatment.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

23.     Upon being released to Ms. Parker in July 2016, Kalissa quickly relapsed and began using marijuana again. Kalissa's father, Mr. Parker, then took Kalissa with him to Washington, D.C. to get a fresh start.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

24.     However, in D.C. Kalissa quickly became non-compliant with her medications, abused illegal drugs, and began prostituting herself.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

25.     In August 2016, Kalissa had a seizure which her father interpreted as the result of a suicide attempt through the use of a controlled substance.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

26.     In September 2016, Kalissa began exhibiting behaviors that her father considered bizarre, such as standing on the side of the road and complaining that people were staring at her. Kalissa also began running away from home during this period.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

27.    In November 2016, Kalissa's father took her to the emergency room after a prolonged episode of Kalissa suffering from insomnia and making increasingly bizarre comments such as, "Are you going to kidnap me?", "Are you trying to set me up?", and "Are they looking at me?"

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

28.    In December 2016, Kalissa's father had her hospitalized for a week due to the continued deterioration of her mental health.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

29.    In March 2016, Kalissa's father again brought Kalissa in for mental health treatment due to her ongoing instability and behavior issues.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

30.    In July 2017, Kalissa's father again hospitalized Kalissa after she said that she wanted to kill her father, her stepmother, and herself.  Kalissa remained in inpatient care for ten days during this hospitalization, once again receiving psychiatric, psychological, and substance abuse treatment.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

31.    Later that same month, Kalissa's father hospitalized Kalissa yet again, just ten days after she was released from the last hospitalization. This time, Kalissa remained in inpatient care for almost two full weeks.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

32.     Over the course of 2015 – 2018 Kalissa abused a wide variety of illegal drugs, including cocaine, heroin, marijuana, Xanax, PCP, and other controlled substances.  After each inpatient treatment hospitalization, Kalissa quickly relapsed into illegal drug abuse.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

33.     Over the course of 2015 – 2018 Kalissa got involved with prostitution, which she routinely relied on to get illegal drugs, money, and male attention.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

34.     At the end of 2017, Kalissa's father determined that he could no longer take care of her, and returned her to live with Ms. Parker.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

35.     On January 4, 2018, Kalissa turned 18 years old.  At that point, Ms. Parker could no longer compel her to receive psychiatric treatment.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge necessary to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

36.     During the period immediately prior to Kalissa's suicide, she made frequent suicidal statements to friends and family, wrote suicidal social media posts, and wrote suicidal letters that law enforcement would ultimately obtain.

**RESPONSE**: Admitted that law enforcement obtained letters written by Kalissa but denied as to Plaintiff's characterization of those letters. Defendant Sells lacks sufficient information to admit or deny the remaining allegations in this paragraph; therefore, those allegations are denied.

37. During the period immediately prior to her suicide, Kalissa began making statements to friends and family indicative of severe psychosis, for instance asserting that everyone was a "clone" and that her mother (Ms. Parker) was not who she said she was.

**RESPONSE**: Denied that Kalissa committed suicide. Defendant Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph; therefore, those allegations are denied.

38. Throughout January 2018, Ms. Parker attempted to persuade Kalissa to accept mental health treatment. However, Kalissa always refused to accept such treatment, and would run away when Ms. Parker attempted to insist.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

39. At one point in January 2018 Ms. Parker contacted Mobile Crisis in an effort to get treatment for Kalissa. However, Mobile Crisis informed Ms. Parker that because Kalissa was an adult Ms. Parker could not require her to get care.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

**D. Kalissa's suicide.**

40. On January 27, 2018, Ms. Parker, Kalissa, and K.W. were at Ms. Parker's home in Nashville, Tennessee.

**RESPONSE**: Admitted that on January 27, 2018, Plaintiff, Kalissa, and K.W. were at Plaintiff's home in Nashville, Tennessee.

41. Shortly before 4 P.M. that afternoon, Ms. Parker and Kalissa got into an argument about Kalissa running off and engaging in high risk behaviors. Ms. Parker ended up taking Kalissa's phone from her to try to prevent her from leaving.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

42.     Ms. Parker went up to her room. She and K.W. both felt sick that day, and Ms. Parker tried to put K.W. down for a nap. Ms. Parker had K.W. sleeping in Ms. Parker's room because of Kalissa's bizarre statements and erratic behaviors.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

43.     Suddenly, Ms. Parker heard a loud noise from downstairs.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

44.     Ms. Parker walked out of her room to see what was happening, only to see Kalissa coming around the corner downstairs on the first floor, engulfed in flames.

**RESPONSE**: Denied.

45.     Terrified for herself and for K.W., Ms. Parker ran up to her room to get her phone.

**RESPONSE**: Denied.

46.     Ms. Parker came back out from her bedroom, leaving K.W. in her room. At that point she saw Kalissa walking up the stairs, still engulfed in flames.

**RESPONSE**: Denied.

47.     Still terrified, Ms. Parker ran back to her room, slammed and locked the door, and then called 911.

**RESPONSE**: Admitted that Ms. Parker called 911. Denied as to all remaining allegations.

48.     Kalissa attempted to open Ms. Parker's bedroom door twice, then walked to her own bedroom and collapsed on the floor.

**RESPONSE**: Denied.

49.     Within moments, Kalissa burned to death from the flames.

**RESPONSE**: Admitted that the Medical Examiner who performed Kalissa's autopsy opined the cause of death was "complications of thermal injuries and inhalation of products of combustion."

## E.     Nashville Fire Department arrival and initial investigation

50.     Neighbors witnessed Ms. Parker screaming for help from her bedroom window, and went to the ground below Ms. Parker's window.  The neighbors brought a ladder, and a male neighbor went up the ladder as far as he could.  Ms. Parker dropped K.W. down to him, and he got K.W. safely away from the house.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, those allegations are denied.

51.     At approximately 4:09 PM, Nashville Fire Department ("NFD") personnel arrived at Ms. Parker's home in response to her call.

**RESPONSE**: Admitted.

52.     The firefighters rescued Ms. Parker, put out the fire, and removed Kalissa's body from Ms. Parker's house.

**RESPONSE**: Admitted.

53.     Ms. Parker and K.W. were taken to the hospital in an ambulance.

**RESPONSE**: Admitted.

54.     At the hospital, a Nashville Fire Marshal interviewed Ms. Parker.  Ms. Parker participated in this interview, and gave her account of what had occurred.

**RESPONSE**: Admitted.

55.     NFD investigators, including Defendant Sells, arrived and surveyed the scene. The stairs leading from the ground floor to the upstairs were burned, as were parts of Kalissa's bedroom. An empty bottle of torch fuel was found in the garage, as was a lighter.

**RESPONSE**: Admitted.

56.     Later, on January 27, 2018, Sells completed an NFD report identifying the "Cause of ignition" as "Cause undetermined after investigation," and the "Factors contributing to ignition" as "undetermined."

**RESPONSE**: Admitted.

57.     NFD and MNPD began a joint investigation of Kalissa's death and the fire, looking to determine who had caused these events and why.

**RESPONSE**: Admitted.

58.     On January 28, 2018, MNPD entered a report classifying Kalissa's death as a suicide.

**RESPONSE**: Admitted that MNPD entered such a report; however, Defendant Sells is unaware when the report was issued.

59.     Ms. Parker participated in an interview, explaining what had happened to the investigators.

**RESPONSE**: Admitted that Plaintiff participated in an interview with MNPD investigators and gave her version of events.

60.     Mr. Parker participated in an interview. During his interview, conducted just days after his daughter's death, Mr. Parker simultaneously acknowledged Kalissa's extensive mental health disorders and suicidal tendencies while simultaneously casting blame on Ms. Parker for not preventing the tragedy.

**RESPONSE**: Admitted, generally, that Kalissa's father participated in an interview with MNPD investigators. Defendant Sells does not have access to MNPD or NFD's investigative

materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

61.     NFD investigator Fred Page interviewed several neighbors, all of whom stated that Ms. Parker was a good neighbor.  Several of them also referenced Kalissa's ongoing troubles.

**RESPONSE**: Admitted that NFD investigator Fred Page interviewed neighbors. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

62.     MNPD investigators also conducted a recorded interview of a man who had been with Kalissa just two days before her death, when his male friend had to be taken to the hospital because of a drug overdose while he was spending time with Kalissa. The man described Kalissa to the MNPD investigators as completely lacking in empathy for his friend, who reportedly died from the overdose.

**RESPONSE**: Admitted that MNPD investigators interviewed a number of individuals. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

63.     On February 6, 2018, an MNPD detective obtained a search warrant for Ms. Parker's residence to collect Kalissa's letters from her sister Kiarra.  It was then executed on February 8, 2018.

**RESPONSE**: Admitted that MNPD obtained information related to its investigation in a variety of ways. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

64. On February 8, 2018, the Tennessee Bureau of Investigation Crime Lab provided a report to NFD Investigator Mark Sells with the results of testing from various samples of carpet, furniture fabric, and cotton balls with fluid from the "tiki torch" container found in Ms. Parker's garage. None of the furniture or carpet samples contained any of the "isoparaffin product" that was on the cotton balls.

**RESPONSE**: Admitted, generally, with the qualification that Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny specific dates or verbiage.

65. Also on February 8, 2018, the County Medical Examiner ("Medical Examiner") completed its report from the autopsy of Kalissa's body. The Medical Examiner determined that Kalissa's cause of death was, "Complications of thermal injuries and inhalation of products of combustion." The Medical Examiner also determined that there was active THC in Kalissa's system at the time of her death. Finally, the Medical Examiner determined that the manner of death "could not be determined" due to "uncertainty as to how the fire was started and by whom."

**RESPONSE**: Admitted, generally, with the qualification that Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations.

66. On February 9, 2018, an MNPD detective obtained a search warrant for Kalissa's Facebook and Instagram records.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Sells. Insofar as a response is required, admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without

sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

67.     Also on February 9, 2018, NFD investigator John Glenn submitted two samples of burned fabric from Kalissa's bedroom to the TBI Crime Lab.

**RESPONSE**: Admitted, generally, with the qualification that Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations.

68.     On February 13, 2018, an MNPD detective obtained a search warrant to access the contents of two cell phones that Ms. Parker had already turned over to MNPD.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Mark Sells. Insofar as a response is required, admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

69.     Also on February 13, 2018, an MNPD detective obtained a search warrant to seize and access the contents of Kalissa's cell phone.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Sells. Insofar as a response is required, admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

70.     Also on February 13, 2018, MNPD Detective Branum entered a report logging the collection and preservation of two cellphones.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Sells. Insofar as a response is required, admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

71. On February 15, 2018, Sells submitted additional samples to the TBI for analysis – namely additional samples from the staircase, carpet from the living room, and carpet and padding from Kalissa's bedroom.

**RESPONSE**: Admitted, generally, with the qualification that Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny specific dates and verbiage.

72. On February 23, 2018, the TBI Crime Lab produced its report after analyzing the additional samples submitted by Glenn on February 9th and Sells on February 15th. The analysis of the burned bedding from Kalissa's room did not reveal any ignitable liquid reside, but the analysis of the other additional samples detected isoparaffin product.

**RESPONSE**: Admitted that the TBI report was produced to Sells. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the report. Accordingly, the remaining allegations in this paragraph are denied.

73. On February 28, 2018, MNPD Detective Branum entered property reports logging the collection and preservation of "me photos," "marijuana roaches," a "glass pipe," and a "journ[a]l with multiple letters."

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Sells. Insofar as a response is required, admitted that MNPD

obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

**F.     NFD and MNPD continue the investigation for the next three-and-a-half years**

74.     Unsatisfied with the explanation that Kalissa had set herself on fire, MNPD and NFD investigators kept the investigation open for the next three and a half years.

**RESPONSE**: Admitted that MNPD and NFD investigators had concerns about the credibility of Plaintiff's explanation that Kalissa set herself on fire and that they continued to investigate the case.

75.     Under Metro policy and practice, NFD had the authority to decide whether to seek criminal charges against Ms. Parker for arson for the house catching on fire, whereas MNPD had the authority to decide whether to seek homicide charges for Kalissa's death.

**RESPONSE**: Defendant Sells is without sufficient information to admit or deny the allegations therein; therefore, the allegations in this paragraph are denied.

76.     On August 5, 2018, MNPD Investigator Kenneth Wolfe entered property reports logging the collection and preservation of latent fingerprints.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Mark Sells. Insofar as a response is required, admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

77.     On March 12, 2019, MNPD investigators conducted a recorded interview of Kalissa's friend, Isaah Aristide, who stated that he had known that Kalissa was suicidal and that he believed Kalissa had set herself on fire.  Aristide told the investigators that Kalissa had been involved with drug use and prostitution, that she was unstable, and that she had made numerous comments about killing herself during the period leading up to her death.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Mark Sells. Insofar as a response is required, admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the remaining allegations in this paragraph are denied.

78.     On September 19, 2019, the TBI Crime Lab produced a latent fingerprint analysis report indicating that prints taken from the "tiki torch" fluid bottle—which Sells had submitted for testing--matched Kalissa's fingerprints.

**RESPONSE**: Admitted, generally, with the qualification that Defendant Sells does not have access to MNPD or NFD's investigative file, and therefore, is without sufficient information to admit or deny the date or specific verbiage.

79.     On November 21, 2019, the search warrants for Kalissa's social media accounts were executed.  Kalissa's social media accounts corroborated the claims made by friends and family about Kalissa's instability, high risk behavior, and bizarre statements.

**RESPONSE**: Admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of their investigations. Accordingly, the remaining allegations in this paragraph are denied.

80.     On February 8, 2020, the TBI Crime Lab issued a report to NFD Investigator Sells reporting the analysis of samples provided from the NFD's test burns of a mannequin and staircase. The report indicated that a "napthenic/paraffinic solvent" was detected in these test burn samples.

**RESPONSE**: Admitted, generally, with the qualification that Defendant Sells does not have access to MNPD or NFD's investigative file, and therefore, is without sufficient information to admit or deny the date or specific verbiage.

81.     On April 1, 2021, MNPD investigators completed a report classifying Kalissa's death as a suicide and closing out MNPD's investigation. The report noted that the evidence was too inconclusive to conclude that Kalissa's death was the result of "foul play," and indicated that if new evidence came to light the case would be reopened for further investigation. The report also reflected that NFD investigators had already concluded that they had probable cause to seek a grand jury indictment against Ms. Parker.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required from Defendant Mark Sells. Insofar as a response is required, admitted that MNPD investigators initially classified Kalissa's death as a suicide, but denied that MNPD's investigation was ever closed. Regarding the remainder of the allegations in this paragraph, Defendant Sells does not have access to MNPD or NFD's investigative file, and therefore, is without sufficient information to admit or deny dates or specific verbiage.

82.     On information and belief, between April 1, 2021 and September 22, 2021 NFD Investigator Sells initiated the process to get Ms. Parker indicted for arson charges.

**RESPONSE**: Denied.

83.     On September 22, 2021, NFD Investigator Mark Sells went before the Grand Jury and accused Ms. Parker of having knowingly set her uninsured home on fire. On information and belief, Sells's testimony to the grand jury was at least misleading, if not

outright false, in several material respects.

**RESPONSE**: Admitted that Defendant Sells testified to the Grand Jury on September 22, 2021, and that he testified that his investigation supported a finding that Ms. Parker set fire to her home. Beyond that, the transcript of that testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

84.    On information and belief, Sells's grand jury testimony asserted that Kalissa was already dead before the fire started, and falsely claimed that the Medical Examiner's report supported this conclusion. In reality, the Medical Examiner's report concluded that Kalissa died from her burn injuries and identified no other potential cause of her death.

**RESPONSE**: Admitted that Defendant Sells testified that his investigation supported a finding that Kalissa was already dead when at least one fire started. Beyond that, the transcript of that testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

85.    On information and belief, Sells asserted to the grand jury that – based on the false premise that Kalissa was already dead before the fire started – Ms. Parker was the only conscious adult in her home at the time of the fire, and thus asserted that Ms. Parker was the only person who could possibly have started the fire.

**RESPONSE**: Admitted that Defendant Sells testified his investigation supported a finding that Kalissa was already dead when at least one fire started. Beyond that, the transcript of that testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

86.    On information and belief, Sells's grand jury testimony either minimized or completely omitted Kalissa's extensive documented history of severe mental health issues,

suicide attempts, and suicidal statements.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Insofar as further answer is required, Defendant Sells is without sufficient information to admit or deny whether Kalissa's mental health was discussed during his testimony, and therefore, denies the same. Defendant Sells specifically denies making false or misleading statements.

87. On information and belief, Sells's grand jury testimony asserted that Ms. Parker's statement in the 911 call that Kalissa "ha[d] to be dead" somehow contradicted her subsequent interview statement that before closing and locking her bedroom door Ms. Parker had seen Kalissa walking toward her in flames, notwithstanding the fact that it was a rational inference on Ms. Parker's part that Kalissa would have died shortly after Ms. Parker locked her out of Ms. Parker's bedroom.

**RESPONSE**: Admitted that Defendant Sells testified that his investigation supported a finding that Plaintiff's version of events was inconsistent with the physical evidence. Beyond that, the transcript of that testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

88. On information and belief, Sells's grand jury testimony omitted any mention of Kalissa's friend Isaah Aristide's account of Kalissa's acute mental deterioration during the period before her death and his belief, as Kalissa's friend, that Kalissa had indeed committed suicide by setting herself on fire.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Insofar as further answer is required, Defendant Sells is without sufficient information to admit or deny whether

Kalissa's mental health was discussed during his testimony, and therefore, denies the same. Defendant Sells specifically denies making false or misleading statements.

89. On information and belief, Sells's grand jury testimony asserted that Ms. Parker's fingerprints were found on the Tiki Torch bottle without acknowledging that Kalissa's fingerprints were also found on the bottle.

**RESPONSE**: Admitted that Defendant Sells testified that the TBI latent fingerprint testing revealed Plaintiff's fingerprints on the tiki torch fluid bottle. Beyond that, the transcript of that testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

90. On information and belief, Sells's grand jury testimony asserted that the evidence showed that the fire on the stairs and the fire in Kalissa's bedroom were separate and unconnected, even though NFD photos of the upstairs hallway showed fire patterns and hand-slide patterns that were indicative of a moving, burning body – *i.e.* Kalissa – traveling from the staircase to Kalissa's bedroom while on fire.

**RESPONSE**: Admitted that Defendant Sells testified that his investigation supported the finding that the fire on the stairs and the fire in Kalissa's bedroom were separate and unconnected, and that NFD took photos of the scene. Beyond that, the transcript of that testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

91. On information and belief, Sells's grand jury testimony failed to acknowledge that NFD took photos showing that there were burn marks and hand prints on the outside of Ms. Parker's bedroom door, corroborating Ms. Parker's statement that Kalissa had briefly tried to get into her room while she was on fire.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

92. On information and belief, Sells's grand jury testimony vaguely and falsely asserted that all of the samples NFD took from Ms. Parker's stairs tested positive for an accelerant, without distinguishing between different types of accelerants. However, in reality the Crime Lab had determined that the one staircase sample included in the Sells's first set of submissions was negative for an accelerant, and that in the second set of samples one was negative, another was positive for "terpenes," and only two were positive for isoparaffins – the type of accelerant detected in the tiki torch fluid.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

93. On information and belief, Sells's grand jury testimony asserted that the TBI tested just two samples from Kalissa's bedroom, both of which tested positive for "heavy distillate." However, in reality the TBI tested six samples from Kalissa's bedroom. Three came back negative for any accelerant, two came back positive for terpenes, and just one came back positive for isoparaffins.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Defendant Sells specifically denies making false or misleading statements.

94. On information and belief, Sells's account to the grand jury of two unconnected fires on the stairs and in Kalissa's bedroom failed to account for the sample of "charred fabric" from the downstairs sectional couch, which made clear that there had also been fire damage in the downstairs area between the garage (where the tiki torch bottle and lighter were found)

and staircase.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Insofar as further answer is required, admitted that there was fire damage to a downstairs sectional couch. Denied that this evidence made it clear that there had also been fire damage to the downstairs area between the garage and the staircase. Defendant Sells specifically denies making false or misleading statements.

95. On information and belief, Sells's grand jury testimony referenced a note found in Kalissa's room insinuating that Ms. Parker was a physically abusive mother, but failed to acknowledge Kalissa's letters, notes, text messages, and social media posts expressing her psychotic delusions, suicidal ideations, and homicidal ideations.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Insofar as further answer is required, admitted that Defendant Sells referenced a note. Defendant Sells specifically denies making false or misleading statements.

96. On information and belief, Sells's grand jury testimony failed to acknowledge that the NFD had not preserved the lighter found in the garage near the tiki torch bottle, and had not taken latent fingerprints from the lighter for analysis.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Insofar as further answer is required, denied. Defendant Sells specifically denies making false or misleading statements.

97. On information and belief, Sells's grand jury testimony falsely asserted that a "fire canine" was at Ms. Parker's house as part of his investigation the night of fire; that the dog "alerted" on the stairs and in Kalissa's bedroom for the presence of accelerants; that those were the only places where the dog alerted for the presence of accelerants throughout the

entire house, which contradicted Ms. Parker's account of the events that afternoon; and that he took samples for testing from the places where the dog alerted.

**RESPONSE**: The transcript of the grand jury testimony speaks for itself and Defendant Sells denies any and all allegations contrary to that transcript. Insofar as further answer is required, denied. Defendant Sells specifically denies making false or misleading statements.

98.     On information and belief, to the extent that Sells's process for getting the case against Ms. Parker docketed with the grand jury involved discussions with the District Attorney's Office, the information Sells presented to the D.A.'s office was misleading in the same respects as are detailed at paragraphs 84 – 96 above.

**RESPONSE**: Denied that Defendant Sells's was responsible for or had a process for getting the case against Plaintiff docketed with the grand jury. Admitted that Defendant Sells had discussions with the District Attorney's Office. Denied as to all remaining allegations.

99.     On September 23, 2021, the day after Sells testified to the grand jury, MNPD investigators entered a report re-classifying Kalissa's death as "Death-Other."  The report noted that there was still "no clear manner of death" for Kalissa, and indicated that MNPD's investigation was being suspended "in the hopes additional information may become available in the future to definitively explain the cause and manner of death."

**RESPONSE**: Admitted that MNPD reclassified Kalissa's death. Regarding the remainder of the allegations in this paragraph, Defendant Sells does not have access to MNPD or NFD's investigative file, and therefore, is without sufficient information to admit or deny dates or specific verbiage.

100.     Also on September 23, 2021, MNPD Sgt. Robert Nielsen entered a property report logging the preservation of the recorded interviews with Richard Baskeyfield, the man whose friend had overdosed while Kalissa was with him just a few days before her suicide, and Isaah Aristide, Kalissa's friend that had told investigators about her suicidal statements

and mental deterioration leading up to her death.

**RESPONSE**: Admitted that MNPD obtained information related to its investigation from a variety of sources. Defendant Sells does not have access to MNPD or NFD's investigative materials, and therefore, is without sufficient information to admit or deny the specifics of the investigations.

101.     On September 29, 2021, based solely on Sells's grand jury testimony and the falsehoods and material exculpatory omissions expressed therein, the Grand Jury indicted Ms. Parker for felony Aggravated Arson and Aggravated Child Endangerment.

**RESPONSE**: Admitted that the Grand Jury indicted Plaintiff on felony Aggravated Arson and Aggravated Child Endangerment. Denied as to all remaining allegations.

102.     On October 1, 2021, Ms. Parker was served with the felony arrest warrant for the NFD's grand jury indictment. Ms. Parker was incarcerated pending trial, with her bond set at $100,000 – an amount far in excess of her financial ability to pay.

**RESPONSE**: Admitted that Plaintiff was arrested and bond was set. Defendant Sells lacks sufficient information to admit or deny the remainder of the allegations in this paragraph; therefore, those allegations are denied.

103.     That same day, Sells took Ms. Parker's phone from her home. Sells obtained the phone by falsely telling Ms. Parker's daughter that Ms. Parker was asking for it. Based on this lie, Ms. Parker's daughter gave Ms. Parker's phone to Sells.

**RESPONSE**: Denied.

**G.     Criminal prosecution, Sells's resignation, and eventual *nolle prosequi***

104.     Based on Ms. Parker's financial status, the Davidson County Criminal Court ("Criminal Court") appointed Attorney Dawn Deaner of the Choosing Justice Initiative to serve as criminal defense counsel for her.

**RESPONSE**: Admitted.

105.    On October 7, 2021, Ms. Deaner filed a motion to reduce Ms. Parker's bond to $10,000, a level that Ms. Parker's family could make on Ms. Parker's behalf.

**RESPONSE**: Admitted that Plaintiff, through her counsel, filed a motion to reduce her bond. Defendant Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph; therefore, the allegations are denied.

106.    On October 13, 2021, the Criminal Court heard Ms. Parker's bond motion. Ms. Parker's mother testified on her behalf, attesting to her financial circumstances and the fact that Ms. Parker was not a flight or safety risk. The only witness who testified for the State was Defendant Sells. Sells made numerous false and misleading statements to the Criminal Court during this bond hearing, including the same misrepresentations that are detailed *supra* at paragraphs 84 – 96.

**RESPONSE**: Admitted that a hearing on Plaintiff's bond motion occurred on October 13, 2021. Admitted that Plaintiff's mother testified on Plaintiff's behalf and that Defendant Sells was the only witness who testified for the State. The remaining allegations in this paragraph are denied.

107.    Without the aid of being able to review any discovery whatsoever, Ms. Deaner's cross-examination of Defendant Sells was sufficiently damaging that the Criminal Court Judge stated on the record at the conclusion of the hearing that "there are just a lot of holes in the case."

**RESPONSE**: Admitted that, during the bond reduction hearing, the Criminal Court Judge stated, "But what I am hearing right now, there are just a lot of holes in the case." Defendant Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph; therefore, those allegations are denied.

108.     Notwithstanding this skepticism, on November 5, 2021, the Criminal Court Judge issued a written order denying Ms. Parker's bond reduction motion.  The Criminal Court Judge justified her ruling primarily by relying on (a) the severity of the criminal charges, which carried up to 60 years in prison, (b) Sells's false claim that Kalissa was dead before the fire started, and (c) Sells's unfounded account about there having been two separate unconnected fires (the stairs and Kalissa's bedroom).

**RESPONSE**: Admitted that Plaintiff's bond reduction motion was denied. The Order speaks for itself and Defendant Sells denies any statement inconsistent with that Order. Sells specifically denies making false or misleading statements.

109.     On October 15, 2021, NFD Investigator Sells sought and obtained a search warrant for Ms. Parker's cell phone, which he had unlawfully taken the day of her arrest. Sells's search warrant affidavit provided an identifying number for the Samsung, but provided no other information regarding the phone's connection to the investigation, whose phone it was, or where the phone was located.  The affidavit submitted by Sells to obtain this search warrant also contained information that was grossly misleading, in that (a) it asserted that "It is believed the victim to be deceased prior to the fire after the results of the Medical Examiners report" without disclosing that the Medical Examiner's conclusion was that Kalissa died from the fire, and (b) it asserted that Ms. Parker's fingerprints were found on the Tiki Torch bottle without acknowledging that Kalissa's fingerprints were also found on the bottle.

**RESPONSE**: Denied.

110.     Ms. Parker was incarcerated on the NFD's arson charges for about six weeks, after which her family was finally able to post bond for her.

**RESPONSE**: Admitted that Plaintiff remained incarcerated. Denied that NFD charged Plaintiff with a crime. Defendant Sells lacks sufficient information or knowledge to admit or deny the remaining allegations in the paragraph; therefore, the allegations are denied.

111.     On December 10, 2021, MNPD Detective Nielsen finally signed the search warrant returns for the seizures of Kalissa's letters and the three cell phones, years after the warrants were actually executed.

**RESPONSE**: Defendant Sells does not have access to MNPD or NFD's investigative file, and therefore, is without sufficient information to admit or deny the specifics of the investigations. Accordingly, the allegations in this paragraph are denied.

112.     In the meantime, on February 8, 2022, Defendant Sells abruptly resigned from the NFD. On information and belief, Sells resigned because he was under investigation for falsely billing Metro for overtime that he had not worked.

**RESPONSE**: Admitted that Defendant Sells resigned from NFD on February 8, 2022, and that certain of Defendant Sells's overtime requests were challenged. The remainder of the allegations are denied.

113.     In the course of developing Ms. Parker's defense, Ms. Deaner retained both a private investigation firm and an independent fire investigations expert.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, the allegations are denied.

114.     After reviewing the discovery and Defendant Sells's bond hearing testimony, the independent expert concluded that Sells had made numerous unsupported claims at the bond hearing under oath and concluded that Sells had failed to follow the professional standards outlined in the National Fire Protection Association (NFPA) *Guide for Fire and Explosion Investigations*, 2021 Edition in multiple key respects.

**RESPONSE**: Defendant Sells lacks sufficient information or knowledge to admit or deny the allegations in this paragraph; therefore, the allegations are denied.

115.     Finally, on December 7, 2022, the State of Tennessee voluntarily took a "nolle prosequi" on the case against Ms. Parker, terminating the prosecution with no finding of guilt against her.

**RESPONSE**: Admitted.

**H.     NFD Policy – or lack thereof – regarding the filing of criminal charges.**

116.     On information and belief, at the time that Sells sought and obtained the grand jury indictment against Ms. Parker, the NFD had no policies at all defining the requirements for an investigator to seek criminal charges.  Thus, NFD had no policies requiring investigators to comply with the constitutional requirement that criminal charges only be sought based on probable cause, or requiring investigators to disclose material exculpatory information to the District Attorney's Office, the grand jury, and/or the court when seeking criminal charges.

**RESPONSE**: Denied that Defendant Sells sought and obtained a grand jury indictment against Plaintiff. Beyond that, denied that NFD permitted or condoned unconstitutional or otherwise unlawful activity.

117.     On information and belief, up to the time that Sells sought and obtained the grand jury indictment against Ms. Parker the NFD had no training program for imparting to NFD investigators the constitutional requirements for initiating criminal charges.  Thus, NFD had no training program to teach investigators the constitutional requirement that criminal charges only be sought based on probable cause, or the requirement that investigators disclose material exculpatory information to the District Attorney's Office, the grand jury, and/or the court when seeking criminal charges.

**RESPONSE**: Denied that Defendant Sells sought and obtained a grand jury indictment against Plaintiff. Beyond that, denied that NFD permitted or condoned unconstitutional or otherwise unlawful activity.

118.     On information and belief, at the time that Sells sought and obtained the various search warrants involved in this case the NFD had no policies at all defining the requirements for an investigator to obtain a search warrant. Thus, NFD had no policies requiring investigators to comply with the constitutional requirement that search warrants only be sought based on probable cause, or the requirement that investigators disclose material exculpatory information in their search warrant affidavits.

**RESPONSE**: Denied that Defendant Sells sought and obtained a grand jury indictment against Plaintiff. Beyond that, denied that NFD permitted or condoned unconstitutional or otherwise unlawful activity.

119.     On information and belief, at the time that Sells sought and obtained the various search warrants involved in this case the NFD had no policies at all defining the requirements for an investigator to obtain a search warrant. Thus, NFD had no training program to teach investigators to comply with the constitutional requirement that search warrants only be sought based on probable cause, or the requirement that investigators disclose material exculpatory information in their search warrant affidavit.

**RESPONSE**: Denied that Defendant Sells sought and obtained a grand jury indictment against Plaintiff. Beyond that, denied that NFD permitted or condoned unconstitutional or otherwise unlawful activity.

## CLAIMS FOR RELIEF
### COUNT I: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C § 1983)
### (DEFENDANTS SELLS AND METRO)

120.     Plaintiff hereby reincorporates paragraphs 1 – 119 by reference.

**RESPONSE**: Defendant Sells reincorporates by reference his answers to paragraphs 1–119.

121.     Defendant Sells initiated a criminal prosecution against Ms. Parker via grand jury indictment. On September 22, 2021, Defendant Sells testified to the grand jury to get Ms. Parker indicted for felony Aggravated Arson and Aggravated Child Endangerment. On information and belief, Sells made numerous misleading and outright false statements to the grand jury as detailed *supra* in order to obtain an indictment against Ms. Parker.

**RESPONSE**: Denied that Defendant Sells initiated a criminal prosecution against Plaintiff. Admitted that Plaintiff was indicted by a grand jury for felony Aggravated Arson and Aggravated Child Endangerment. Admitted that Defendant Sells testified to the Grand Jury on September 22, 2021. Denied as to the remaining allegations.

122.     But for Sells's misleading and false claims, Sells lacked probable cause to charge Ms. Parker with the indictment.

**RESPONSE**: Denied.

123.     Ms. Parker was arrested and incarcerated because of the grand jury indictment initiated by Sells.

**RESPONSE**: Admitted that Plaintiff was arrested and incarcerated upon a finding of probable cause by the grand jury. Denied that Defendant Sells initiated the indictment.

124.     On December 7, 2022, the criminal prosecution against Ms. Parker terminated in a *nolle prosequi* without any finding of guilt against Ms. Parker.

**RESPONSE**: Admitted that the criminal prosecution against Plaintiff terminated in a *nolle prosequi* without any finding of guilt against Plaintiff.

125.     By allowing NFD investigators to wield policing power – in particular criminal charging and arrest authority – without any policy or training whatsoever to ensure that this power was utilized within constitutional constraints, Defendant Metro was

deliberately indifferent to the obvious risk that NFD investigators would initiate criminal charges in violation of the Constitution.

**RESPONSE**: This paragraph is directed to another Defendant, and therefore, no response is required. Insofar as a response is required, denied.

126.     The Defendants acted under color of law in initiating and maintaining the criminal charges against Plaintiff.

**RESPONSE**: Denied that Defendant Sells initiated or maintained criminal charges against Plaintiff. Beyond that, this paragraph calls for a legal conclusion, which does not require a response.

127.     Defendant Sells acted with reckless and intentional disregard for Ms. Parker's constitutional rights.

**RESPONSE**: Denied.

128.     The false indictment inflicted a prolonged deprivation of liberty, emotional injuries, and financial losses on Ms. Parker.

**RESPONSE**: Denied that Plaintiff was falsely indicted, and denied that Plaintiff is entitled to any relief.

<u>**GENERAL DENIAL**</u>

Any facts or allegations stated in Plaintiff's Complaint not specifically admitted or denied in the prior paragraphs are hereby denied, and strict proof is demanded thereof.

<u>**GENERAL AND AFFIRMATIVE DEFENSES**</u>

1.     Defendant Mark Sells denies that Plaintiff is entitled to any relief and asserts that this matter should be dismissed for failure to state a claim on which relief can be granted.

2.     Defendant Mark Sells is absolutely immune from civil prosecution for

Plaintiff's claim.

3.     Defendant Mark Sells is entitled to qualified immunity for Plaintiff's claim.

4.     Plaintiff cannot establish the essential elements of a malicious prosecution claim.

5.     Defendant Mark Sells did not violate any of Plaintiff's constitutional rights or other state or federal rights.

6.     No act or omission of Defendant Mark Sells was the proximate cause of any damages claimed by Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, having answered Plaintiff's Complaint, Defendant Sells prays:

1.     That this be accepted as his Answer herein;

2.     That this cause be dismissed and held for naught;

3.     That all costs and other reasonable fees be charged to and borne by Plaintiff;

4.     That a jury of 12 hear all claims so triable; and

5.     For such other relief as the Court deems appropriate.

Respectfully submitted,

Kevin C. Klein (#23301)
Matthew JP Horton II (#38724)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
kevin.klein@kleinpllc.com
jp.horton@kleinpllc.com

*Counsel for Mark Sells*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing ANSWER on the Court's CM/ECF system on this 4th day of November, 2023, which forwarded a copy to:

Kyle Mothershead
2901 Dobbs Ave.
Nashville, TN 37211

Dawn Deaner
1623 Haynes Meade Cir.
Nashville, TN 37207

*Counsel for Plaintiff*

Allison L. Bussell
John K. Whitaker
Samuel D. Keen
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219

*Counsel for Defendant Metropolitan Government of
Nashville and Davidson County*

Kevin C. Klein